Greco, PJ.
The plaintiffs-appellants, Andre and Simone Passos (hereafter, “Passos” in the singular) leased from the defendants-appellees, JES Railroad Realty Trust, JES Railroad LLC, and James R. Santo (hereafter, simply “Santo”), the premises located at Railroad Avenue, Unit 4 in Gloucester. Passos thereafter operated the premises as a take-out restaurant under the name of Gloucester Butcher Shop & Market, Inc. The litigation between these parties began when Passos commenced an action in the Gloucester District Court against Santo for wrongful eviction in violation of G.L.c. 184, §18 and for breach of the terms of their lease. Passos alleged that Santo improperly changed the locks, thereby prohibiting Passos from entering the restaurant. Passos then filed a separate complaint in the Essex Superior Court raising the same issues and sought a consolidation of the two actions in the Superior Court, which motion was denied by a Superior Court judge.
Subsequently, Santo filed a motion for summary judgment as to all counts in the plaintiffs’ complaint. In support of the motion, Santo filed an affidavit stating the following: In October, 2010, Passos entered into an agreement with Santo that upon Santo’s purchase of the property on Railroad Ave., Unit 4, from a Mr. Swimm, Santo would “take over and assume the existing commercial lease.” At this point, Passos was renting Unit 4 as a sublessee. Pursuant to their agreement, Passos as a tenant was “going to operate a small meat-market in the property.” It was agreed that Passos could cook on the premises, but only for take-out orders. Santo maintained that Passos would require a permit from the town of Gloucester to serve food on the premises. Santo would “have to [have] been part of any permit application.” Notwithstanding this agreement, Passos installed seating for 30 customers.
In the affidavit, Santo further stated that Passos was required to pay $1,600.00 in rent, along with “a percentage of the real estate taxes, property insurance, utilities and common maintenance expenses.” In November, 2011, Passos defaulted on these obligations, thus owing $3,800.00 in rent and $3,951.16 in additional charges. Passos refused to pay that money. Santo denied that it was agreed that Passos did not have to pay the additional charges. Passos told Santo that Passos was having financial *83 problems and was “going to have to dose” the business. Santo thereupon told Passos that Passos was responsible to pay what was owed, and that Santo would have to approve “any potential new tenant.” In October, 2011, Santo observed a sign on Passos’ restaurant indicating that it was “closed for renovations.” Passos had not sought from Santo approval for any renovations, as required by their lease. When Passos did not respond to Santo’s inquiries about renovations, Santo, “concerned about the properties’ safety and security,” inspected the premises, finding it to be a “mess.” Based upon the condition of the premises, Passos’ default on moneys owed, Passos’ failure to return telephone calls, and Santo’s concern that Passos might assign the lease without Santo’s consent, Santo concluded that Passos had abandoned the property, and accordingly changed the locks. On November 12, 2011, when Passos attempted to break into the premises, Santo called the police. The police then “prevented [Passos] from forcing his way into the property.” Santo agreed the Passos could remove “his equipment and personal property,” but could not remove the “hood venting system,” which was connected to the roof of the building and “affixed” to the property, the removal of which would “leave a substantial hole in the roof.”
Passos did not submit any affidavits in opposition to Santo’s motion for summary judgment. However, the plaintiffs’ complaint was verified, and thus may be treated as an affidavit. Pupecki v. James Madison Corp., 376 Mass. 212, 217 (1978). The complaint alleged that Passos had paid Santo the rent due through September, 2011, but did not pay the October rent “due to financial hardship.” Passos informed Santo that Passos “would make... best efforts to pay all outstanding rent owed.” However, “[o]n or about November 5, 2011, without notice, or any judicial process, Santo changed the locks at the Premises.” Passos then contacted Santo and asked to be able to go on the premises to obtain personal property. Santo responded that Passos could do so only if Passos paid Santo $10,000.00. In response, Passos sent Santo a demand letter under G.L.c. 93A, stating that Santo had violated G.L.C. 184, §18 by illegally refusing Passos access to the premises, which resulted in Passos’ inability “to operate the[] business.” Passos also alleged that Santo “refused to compensate Passos for... loss of business income.”
Citing G.L.c. 184, §18,[3] Passos further alleged that Passos was denied entry to the premises; that “[a]s a tenant... under a commercial lease, [Santo] had no basis to demand payment of $10,000 as a condition to re-gain entry”; that Santo informed Passos that Santo was looking for alternative commercial tenants to occupy the premises and placed a “For Rent” sign in the window of the premises; that on February 11, 2012, Santo “granted Passos limited supervised access into the premises to retrieve ... personal property”; that before Passos finished removing personal property, Santo demanded that Passos leave the premises; that Santo has continued not to allow Passos on the property so that Passos could remove personal prop *84 erty; and that Passos “incurred damages and will suffer irreparable harm in the absence of immediate preliminary injunctive relief.”
The above allegations formed the basis of the following nine counts set out in the verified complaint filed by Passos, to wit: breach of contract, violation of G.L.c. 184, §18, conversion, violation of the covenant of good faith and fair dealing, unjust enrichment and constructive trust, breach of quiet enjoyment, fraud, violation of G.Lc. 93A, and declaratory relief.
At the hearing on the cross motions for summary judgment, counsel for Passos argued that Santo had waived any obligations Passos had to pay the $3,800.00 in back rent and the $3,951.16 for property taxes, common expenses, and property insurance, and that “Santo changed the locks to the premises and locked [Passos]” out on the ground that Santo was entitled to do so under their lease. Santo, however, alleged that there was evidence that Passos abandoned the property. Counsel for Passos further argued that by the above actions, Santo had repossessed the property without the required ten-day notice. While the above representations were in the form of legal arguments and not testimony under oath, at the hearing on the cross motions, both parties referred to the lease.
The trial court judge allowed Santo’s motion for summary judgment and denied the cross motion filed by Passos. No specific findings were made, and no reference was made to the various counts set out in the complaint filed by Passos. No damages were assessed. This appeal followed.
On a motion for summary judgment, the moving party must “show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995), quoting Mass. R. Civ. R, Rule 56(c). The facts are viewed “in the light most favorable to the nonmoving party.” Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
Section 19 of the lease between the parties provided that in the event the “LESSEE shall default in the payment of any installment of rent or other sum herein specified and such default shall continue for ten (10) days after written notice thereof... then the LESSOR shall have the right thereafter, while such default continues, to re-enter and take complete possession of the leased premises, to declare the term of the lease ended, and remove the LESSEE’S effects, without prejudice to any remedies ... for arrears of rent or other default” (emphasis added). Section 20 of the lease spelled out in detail how notice from the lessor to the lessee could be accomplished.
As to the question of whether Passos had abandoned the premises, see E.G. DAHER & H. CHOPP, LANDLORD AND TENANT LAW §15:26, at 225 (3d ed. 2000), which states that “[a]n abandonment of the premises will not relieve the tenant from liability, unless the landlord agrees to it and takes possession; if the landlord does so, it becomes a surrender.” However, see also Cassidy v. Welsh, 319 Mass. 615, 618-619 (1946), where the Supreme Judicial Court stated that “[t]here must be a meeting of the minds and the intent of the landlord to accept the surrender must be clearly shown.”
Based upon the above, it would appear that there are genuine questions of fact as to whether Santo agreed that Passos did not have to pay charges other than for rent; whether there was a “meeting of the minds” between the parties on whether Passos had abandoned the property or whether an abandonment could be inferred; and whether Santo complied with the notice requirement set out in the lease. Moreover, *85 in addition to questions of fact, the trial court did not expressly address all nine counts in Passos’ complaint, although some of those counts may well be considered subsumed within the count for breach of contract. Finally, as noted above, the final entries on the docket do not indicate any damages, but simply indicate “Judgment for Defendant(s)” and “Judgment Against: Passos, Andre/Passos, Simone.”
Accordingly, this matter must be returned to the Gloucester District Court for trial.
So ordered.

 Section 18 provides that no “person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law. The superior and district courts shall have jurisdiction in equity to enforce the provisions of this section.”